No. 24-30804
In the United States Court of Appeals for the Fifth Circuit

ALVIN WILLIAMS,

PLAINTIFF – APPELLEE

V.

DAVID VOORHIES, CAPTAIN; OMAR WALKER, LIEUTENANT,

DEFENDANTS – APPELLANTS

_____

On Appeal from the United States District Court for the
Middle District of Louisiana
3:21-CV-00636

_____

**DEFENDANTS-APPELLANTS' OPENING BRIEF**

_____

LIZ MURRILL
Louisiana Attorney General

*/s/ Timothy R. Wynn*
PHYLLIS E. GLAZER (La. #29878)
TIMOTHY R. WYNN (La. #35393)
LEONARD PENZO (La. #36759)
Assistant Attorneys General

Louisiana Department of Justice,
Litigation Division
330 Marshall Street, Suite 777
Shreveport, Louisiana 71101
Telephone: (318) 676-5700
WynnT@ag.louisiana.gov
*Counsel for Defendants-Appellants*

## CERTIFICATE OF INTERESTED PERSONS

A certificate of interested persons is not required here because, under the fourth sentence of Fifth Circuit Rule 28.2.1, Defendants-Appellants—as "governmental" parties—need not furnish a certificate of interested persons.

*/s/ Timothy R. Wynn*
Timothy R. Wynn
*Counsel of record for Defendants-Appellants*

## STATEMENT REGARDING ORAL ARGUMENT

This appeal regards the application of the qualified immunity defense, and the panel may benefit from oral argument. However, at this time, the Plaintiff–Appellee is not represented by counsel and is incarcerated at the Louisiana State Penitentiary in Angola, Louisiana. The risks and expenses associated with his in-person presentation of oral argument outweigh any potential benefits. Therefore, if the Court would like to hear oral argument, the Defendants respectfully request that it be conducted remotely.

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS ........................................ii

STATEMENT REGARDING ORAL ARGUMENT ............................... iii

TABLE OF CONTENTS........................................................................iv

TABLE OF AUTHORITIES ................................................................. vi

INTRODUCTION................................................................................ 1

JURISDICTIONAL STATEMENT ........................................................ 2

STATEMENT OF THE ISSUES ........................................................... 3

STATEMENT OF THE CASE............................................................... 5

    I.    Voorhies used reasonable and necessary force against Williams while Williams was in his cell; Walker was not present. .......................................................................................... 5

    II.   Williams injured his own hand hours before the incident in the cell. ...................................................................................... 7

    III. Williams filed suit against Walker and Voorhies.......................... 9

    IV. The District Court directed Williams to file an amended complaint on the proper form. ...................................................... 12

    V.   The Defendants moved for summary judgment asserting qualified immunity........................................................................ 13

    VI. The Magistrate Judge recommended granting the motion in part and denying it in part, and the District Court adopted the recommendation. ................................................................. 14

SUMMARY OF THE ARGUMENT ...................................................... 17

ARGUMENT...................................................................................... 20

iv

I.    The Court may reverse the denial of summary judgment because Williams failed to establish that the Defendants lack qualified immunity........................................................ 20

II.   Williams did not establish that Walker failed to intervene, so Walker has qualified immunity for the bystander claim. ...... 23

    A.   This Court should reverse because the District Court was not permitted to rely on the original complaint to deny summary judgment. ................................................ 24

    B.   Voorhies did not use excessive force against Williams in the stairway, and even if he did, Walker was not present to intervene......................................................... 28

    C.   The original complaint does not establish Walker violated Williams's rights by failing to intervene to stop the alleged excessive force. ...................................... 29

III.  Williams did not establish that Voorhies used excessive force against him in the stairway, so Voorhies has qualified immunity for that claim................................................ 34

    A.   The Magistrate Judge and the District Court impermissibly relied on the original complaint.................... 37

    B.   The original complaint does not establish that Voorhies used excessive force in the stairway. .................... 38

       1.  The injuries were *de minimis*. ......................... 38

       2.  Williams did not establish the use of force was unnecessary. ................................................ 42

       3.  The original complaint establishes nothing regarding the remaining *Hudson* factors. ......................... 44

CONCLUSION ..................................................... 45

CERTIFICATE OF SERVICE................................... 47

CERTIFICATE OF COMPLIANCE........................... 48

# TABLE OF AUTHORITIES

## Regulations

22 La. Admin. Code Pt I, § 341 .............................................................. 37

## Rules

Fed. R. App. P. 4 ................................................................................... 3

Fed. R. App. P. 32 ............................................................................... 48

Fifth Circuit Local Rule 32.3.............................................................. 48

## Cases

*Anthony v. Schackmann*, 402 F. App'x 207 (9th Cir. 2010)................... 44

*Ashcroft v. al-Kidd*, 563 U.S. 731 (2011) ................................................. 20

*Bazan v. Hidalgo Cnty.*, 246 F.3d 481 (5th Cir. 2001)............................. 2

*Bevill v. Wheeler*, 103 F.4th 363 (5th Cir. 2024) ............................... 20, 21

*Bourne v. Gunnels*, 921 F.3d 484 (5th Cir. 2019)............................. 35, 39

*Bradshaw v. City of New York*, 855 F. App'x 6 (2d Cir. 2021)............... 40

*Brooks v. Kelly*, 736 F. App'x 497 (5th Cir. 2018) ................................. 39

*Calabria v. Dubois*, 23 F.3d 394 (1st Cir. 1994)..................................... 41

*Carswell v. Camp*, 54 F.4th 307 (5th Cir. 2022) ................................... 27

*Chester v. Samuels*, 740 F. App'x 410 (5th Cir. 2018)........................... 26

*Columbia Plaza Corp. v. Sec. Nat. Bank*,
    676 F.2d 780 (D.C. Cir. 1982) ............................................................ 22

*Cortesluna v. Leon*, 979 F.3d 645, 656 (9th Cir. 2020),
   *cert. granted, decision rev'd on other grounds as to*
   *separate defendant sub nom. Rivas-Villegas v. Cortesluna*,
   595 U.S. 1 (2021), *and adhered to in part*,
   22 F.4th 866 (9th Cir. 2022) .................................................................. 31

*Cowart v. Erwin*, 837 F.3d 444 (5th Cir. 2016) ........................... 35, 36, 39

*Cunningham v. Castloo*, 983 F.3d 185 (5th Cir. 2020) ........................... 21

*Davis v. Cannon*, 91 F. App'x 327 (5th Cir. 2004) .................................. 29

*Durant v. Brooks*, 826 F. App'x 331 (5th Cir. 2020) .............................. 24

*Edwards v. Oliver*, 31 F.4th 925 (5th Cir. 2022) .................................. 2, 3

*El v. City of Pittsburgh*, 975 F.3d 327 (3d Cir. 2020) ...................... 30, 31

*Ervin v. Masters Res. LLC*, 355 F. App'x 819 (5th Cir. 2009) ............... 22

*Evans v. Cameron*, 442 F. App'x 704 (3d Cir. 2011) .............................. 33

*Gaudreault v. Municipality of Salem, Mass.*,
   923 F.2d 203 (1st Cir. 1990) ............................................................... 31

*Hale v. Townley*, 45 F.3d 914 (5th Cir. 1995) ...................................... 28

*Hudson v. McMillan*, 503 U.S. 1 (1992) ............................................... 44

*Hughes v. Rodriguez*, 31 F.4th 1211 (9th Cir. 2022) ............................. 33

*Jackson v. City of Atlanta, Georgia*,
   97 F.4th 1343 (11th Cir. 2024) ........................................................... 31

*Joseph on behalf of Est. of Joseph v. Bartlett*,
   981 F.3d 319 (5th Cir. 2020) .......................................................... 3, 30

*Keller v. Fleming*, 952 F.3d 216 (5th Cir. 2020) ......................................32

*King v. Dogan,* 31 F.3d 344 (5th Cir. 1994)...........................25, 26, 27, 38

*Kingsley v. Hendrickson*, 576 U.S. 389 (2015).........................................23

*Kitchen v. Dallas Cty.*, 759 F.3d 468 (5th Cir. 2014) ...............................23

*Lanigan v. Vill. of E. Hazel Crest, Ill.*, 110 F.3d 467 (7th Cir. 1997).....32

*Lee v. Wilson*, 237 F. App'x 965 (5th Cir. 2007) ......................................41

*Lockett v. Suardini*, 526 F.3d 866 (6th Cir. 2008)...................................41

*Luken v. Lynaugh*, 98 F.3d 1339 (5th Cir. 1996) ....................................23

*Matthews v. Villella*, 381 F. App'x 137 (3d Cir. 2010) ............................33

*Maurer v. Independence Town*, 870 F.3d 380 (5th Cir. 2017) ...............25

*McDonald v. McClelland*, 779 F. App'x 222 (5th Cir. 2019)...................26

*Mersch v. City of Dallas, Tex.*, 207 F.3d 732 (5th Cir. 2000) .................25

*Mitchell v. Forsyth*, 472 U.S. 511 (1985) ...................................................3

*New Orleans Ass'n of Cemetery Tour Guides & Companies v.
  New Orleans Archdiocesan Cemeteries*, 56 F.4th 1026
  (5th Cir. 2023) .........................................................................................25

*O'Neill v. Krzeminski,* 839 F.2d 9 (2d Cir.1988)....................................33

*Quinn v. Zerkle*, 111 F.4th 281 (4th Cir. 2024) .......................................32

*Ramirez v. Escajeda*, 44 F.4th 287 (5th Cir. 2022) ...........................27, 34

*Riley v. Newton*, 94 F.3d 632 (11th Cir. 1996).........................................33

*Roberson v. Dallas County*, 207 F.3d 658 (5th Cir. 2000).......................42

*Santos v. White*, 18 F.4th 472 (5th Cir. 2021) .........................................35

*Scott v. Harris*, 550 U.S. 372 (2007) ..................................................22, 39

*Smith v. Mensinger*, 293 F.3d 641 (3d Cir. 2002)....................................30

*Stevenson v. Toce*, 113 F.4th 494 (5th Cir. 2024) ....................................20

*Terrell v. Allgrunn*, 114 F.4th 428 (5th Cir. 2024)..................................28

*Thomas v. Holly*, 533 F. App'x 208 (4th Cir. 2013) ................................33

*Timpa v. Dillard*, 20 F.4th 1020 (5th Cir. 2021)..............................28, 30

*Turner v. City of Champaign*, 979 F.3d 563 (7th Cir. 2020)...................28

*Valderas v. City of Lubbock*, 937 F.3d 384 (5th Cir. 2019).........21, 34, 38

*Webster v. Saint Louis Cnty.*, ——F.4th——,
    2025 WL 1187171 (8th Cir. Apr. 24, 2025) .........................................44

*Whitley v. Hanna*, 726 F.3d 631 (5th Cir. 2013) ........................23, 28, 29

*Wilkins v. Gaddy*, 559 U.S. 34 (2010)...........................................2, 36, 42

*Williams v. Stevens*, 192 F.3d 127 (5th Cir. 1999) ..................................41

*Wilson v. Town of Mendon*, 294 F.3d 1 (1st Cir. 2002) ...........................31

## INTRODUCTION

The Defendants–Appellants, Captain David Voorhies and Lieutenant Omar Walker, are entitled to qualified immunity because they did not violate the Plaintiff's constitutional rights. The Plaintiff–Appellee, Alvin Williams, claims Voorhies used excessive force against him in a stairway while escorting him from his prison cell to a shower. He alleges that Voorhies led him into a wall, causing his lip to bleed, and then pressed on his right hand, all in a matter of seconds. He also claims Walker failed to intervene to stop Voorhies from using that minimal amount of force.

The Magistrate Judge recommended that summary judgment on qualified immunity be denied, and the District Court adopted that recommendation. Williams presented no evidence establishing that the stairway incident occurred and that, if it did, Walker was even present. Indeed, the Defendants presented evidence establishing that the incident did not occur and that Walker was not present when Voorhies escorted Williams to the shower. Nevertheless, the Magistrate Judge relied on the original complaint because it was verified, but the original complaint is a legal nullity because an amended complaint superseded it.

Even accepting the allegations in the original complaint as true, Walker had no reasonable opportunity to intervene in the alleged use of force by Voorhies. Also, "[n]ot every malevolent touch by a prison guard gives rise to a federal cause of action." *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010) (cleaned up) (citation omitted). The use of force was minimal here because Williams only suffered a busted lip and a swollen hand. The original complaint contains no other proof establishing that Voorhies maliciously and sadistically intended to cause harm or that his conduct was repugnant to the conscience of mankind, such that Voorhies can be found to have inflicted cruel and unusual punishment on Williams. This Court should reverse the District Court's judgment denying summary judgment on qualified immunity.

## JURISDICTIONAL STATEMENT

The district court partially denied Defendants' motion for summary judgment based on qualified immunity. ROA.933. The Defendants appeal the denial of qualified immunity. Ordinarily, the denial of a motion for summary judgment is not reviewable on an interlocutory appeal. *Edwards v. Oliver*, 31 F.4th 925, 929 (5th Cir. 2022) (citing *Bazan v. Hidalgo Cnty.*, 246 F.3d 481, 490 (5th Cir. 2001)). The denial of a motion

2

for summary judgment based on qualified immunity, however, is appealable "to the extent that it turns on an issue of law." *Joseph on behalf of Est. of Joseph v. Bartlett*, 981 F.3d 319, 331 (5th Cir. 2020) (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 530 (1985)). This court, therefore, has jurisdiction to examine the undisputed facts and to determine (1) whether the defendant violated plaintiff's constitutional rights and (2) whether the right was clearly established. *Id.* at 328; see *Edwards*, 31 F.4th at 929.

The Magistrate Judge recommended that qualified immunity be denied to Walker and Voorhies. ROA.912. The District Court adopted the Report and Recommendation on December 3, 2024. ROA.933. Under Fed. R. App. P. 4(a)(1), Voorhies and Walker timely filed their notice of appeal on December 23, 2024. ROA.948.

## STATEMENT OF THE ISSUES

1.    The original complaint is the only document that the Magistrate Judge and District Court relied upon to deny summary judgment. The amended complaint superseded the original complaint. Did the Magistrate Judge and District Court incorrectly deny summary judgment based on a null complaint?

2.    An officer cannot be liable for failure to intervene if the officer is not present while an alleged constitutional violation occurs. The competent summary judgment evidence establishes that Walker was not present while Voorhies escorted Williams to the shower. Is Walker entitled to qualified immunity because Williams failed to establish a constitutional violation?

3.    To be liable for a failure to intervene, an officer must have a reasonable opportunity to prevent the alleged harm caused by another officer. Could Walker have violated Williams's constitutional rights by failing to intervene in Voorhies's alleged sudden use of force, which lasted only seconds?

4.    Voorhies allegedly led Williams to a wall and pressed on his hand, causing a busted lip and a swollen hand. The original complaint does not describe William's conduct, but it reveals the use of force was not unprovoked. Did Voorhies violate Williams's rights by using such minimal force without any other evidence of malicious and sadistic intent to cause harm?

## STATEMENT OF THE CASE

Williams sued under 42 U.S.C. § 1983 claiming that Captain David Voorhies and Lieutenant Omar Walker violated his constitutional rights during an encounter on April 28, 2021, at the prison where he is incarcerated. ROA.13–19, 33–37, 723, 753.

The Defendants filed a motion for summary judgment asserting qualified immunity. ROA.696. The Magistrate Judge recommended that the District Court deny the motion as to Williams's claim that Voorhies used excessive force while escorting him to a shower and that Walker failed to intervene.[1] ROA.926. After the Defendants objected to the Report and Recommendation, ROA.927, the District Court issued an order adopting the Magistrate Judge's recommendation. ROA.933. The District Court otherwise dismissed Williams's claims for incidents that allegedly occurred in his cell and in a prison shower. ROA.933.

## I.     Voorhies used reasonable and necessary force against Williams while Williams was in his cell; Walker was not present.

On April 28, 2021, around 7:05 a.m., Voorhies was making rounds on the tier where the Plaintiff was housed, the CBD Upper Left Tier.

---

[1] It recommended dismissal of other claims. ROA.926.

ROA.723, 748, 752. He saw Williams in his cell and that Williams had removed the plastic covering from his mattress and used the plastic to tie his cell door shut. ROA.723. He ordered Williams to the cell door, and Williams complied. ROA.723. Voorhies then noticed that Williams had some of the plastic tied around his abdomen. ROA.723. He then ordered Williams to remove the material and submit to a strip search, but Williams refused. ROA.723.

Voorhies gave Williams several additional direct verbal orders to remove the material and submit to a search, but Williams continued to refuse. ROA.723. So, Voorhies administered the "minimum amount of chemical agent into his cell." ROA.724. After that, Williams complied with orders. ROA.724. Voorhies then searched Williams and found no contraband. ROA.724. Walker was not present. ROA.725.

After chemical agents are used, inmates are offered a shower if they wish to take one. ROA.765. After the search was completed, Voorhies restrained Williams and escorted him to the shower. ROA.724, 752. After the shower, Voorhies gave Williams a clean jumpsuit. ROA.724. Walker was not present. ROA.725.

Medical providers at the prison were notified that Williams had been sprayed with the chemical agent, and they attempted to evaluate him. ROA.724. However, Williams would not get off the floor, and he refused to cooperate with medical treatment. ROA.733. Walker may have been present by that point, because he signed the medical record for Williams, who "refused to get up and sign." ROA.725. By that time, the use-of-force had ended.

## II. Williams injured his own hand hours before the incident in the cell.

Just 10 hours before the incident in the cell, Williams punched another inmate, and he was taken to be examined by medical personnel. ROA.743–46. Williams complained of swelling and pain in his right hand. ROA.736. His hand was X-rayed, which showed no fracture or dislocation. ROA.737. After the incident at issue in this case, Williams saw medical providers on May 3, 2021. ROA.730. He complained that he "was involved in a[n] incident" on April 28, 2021, "where [his] hand was bent and twisted to the point where [his] nerves was damaged, causing [him] to lose partial feeling in [his] [th]umb and right hand." ROA.730. The nurse who assessed him noted "hand swelling" to his right "thumb/palm area" and right index finger. ROA.730.

On May 4, 2021, he saw prison medical providers again as a result of the April 27, 2021 fight. ROA.732. He complained of having jammed his finger. ROA.732. He had "full range of motion in all extremities [without] swelling." ROA.732. He was able to "flex and grip." ROA.732. He was seen again the next day, again stating he "was involved in a simple fight [] where [his] right hand was fracture[d] and now [] prohibiting [him] from bending it." ROA.731. He said his "right wrist [was] also sprung." ROA.731.

Other records reveal that he was X-rayed multiple times after April 28, 2021, with normal results. A September 26, 2021 medical record states that Williams had an X-ray on May 7, 2021 that was "normal." ROA.109. On December 15, 2021, he saw medical providers again about his right hand, this time attributing his injury to the April 28, 2021 incident. ROA.107. He stated that he had been x-rayed as a result of his complaints and that the X-rays were negative. ROA.107. The medical provider's notes also reflect that his wrist had been X-rayed "Neg x 2." ROA.107.

### III.  Williams filed suit against Walker and Voorhies.

On November 2, 2021, Williams filed a complaint alleging Voorhies and Walker violated his constitutional rights three different times on April 28, 2021. ROA.13.

**The Cell Incident.** Williams alleges that around 7:10 a.m. he "observed [] Voorhies and [] [] Walker approaching [his] cell." ROA.14. He asked them "for Mental Health because [he] was high and feared for [his] life." ROA.14. He alleges that Walker shouted, "NO!" ROA.14. Voorhies noticed that Williams had tied the door with "plastic material used to encase the mattress" and ordered Williams to "untie the material" from the door. ROA.14. Williams complied, and asked to see "Mental Health" again, but Walker allegedly said, "f**K NO!" ROA.14. Williams asked again, and Walker again shouted "NO!" ROA.14. Voorhies then ordered Williams to come to the cell door and untie the plastic wrapped around his abdomen. ROA.14. He alleges that he "began walking to the front of the cell[] trying to unwrap the material," and Voorhies ordered him "to put [his] hands through the cell hatch to be restrained." ROA.14. After he was restrained, he allegedly again asked for "Mental Health," ROA.14, and Walker responded by attempting to spray Williams with chemical

agent. ROA.14. Williams alleges that he asked Walker why he sprayed him and that he was "[i]mmediately [] cut off by another attempt of the chemical agent." ROA.14. "This time" Walker "successfully got [Williams] in the eyes and mouth." ROA.15. Williams alleges he then dumped his head in the toilet "trying to rinse the chemical" off, and Voorhies and Walker screamed for him to "come to the front of the cell." ROA.15. The officers then led him out of the cell, "yanking and trying to untie the rest of the material that was wrapped around [Williams's] abdomen." ROA.15. He was then pulled in an "awkward position that made [him] feel excrutiating pain." ROA.15.

**The stairway incident.** Williams, admittedly "high" and "still blinded" by the chemical agent, alleges that on "information and belief," Voorhies and Walker escorted him "down the CBD stairway." ROA.15. He alleges Voorhies "purposefully led [him] straight to the wall of the stairway," causing his lip to bleed. ROA.15. Williams does not state what he was doing that prompted Voorhies to do that, but he alleges that he immediately became defensive and tried to excuse his behavior. He claims he could not see: "I [] shouted to Cpt. Voorhies come on man! I complied with all your orders and you know the chemical Lt. Walker

sprayed me with hinder my vision." ROA.15. Walker allegedly then told Williams to "shut the f**k up!" ROA.15. Then, Voorhies allegedly "pinned [Williams] to the wall while [he] was still in restraints and began to take [Williams's] right hand and press against them [*sic*] in a manner that had [Williams] in excruciating pain." ROA.15. This alleged "excessive abuse lasted for seconds[] but felt like minutes." ROA.15. Williams alleges he "felt a few bones in [his] right hand crack[] but [] not break." ROA.15. He alleges Voorhies caused a "stress fracture in [his] right hand," and he predicts it "will eventually lead to a broken bone." ROA.15.

**The shower incident.** Williams next alleges that Voorhies and Walker escorted him to the shower, where he "was stripped naked and told to rinse off in a shower." ROA.16. The officers "sabotage[d]" him with "extremely hot water" that they both knew "was extremely hot from numerous past complaints by prisoners." ROA.16. Williams further alleges that "the steamy water scalded [his] skin" due to "the chemical agent that was sprayed" on him. ROA.16. The water "caused the chemical agent to intensify with a burning sensation and pain on [his] face." ROA.16. The water "re-activated" the chemical agent "to burn [Williams] in a more intense" way "on [his] skin." ROA.18. Williams "grimaced in

pain struggling to stand up right." ROA.16. He "couldn't quite hear what was said[,] but it sounded like snickering and laughing." ROA.16. Yet, later in the complaint, Williams alleges that he specifically heard Voorhies laugh and say that he "'always get[s] them like that when [they] spray that shit on them.'" ROA.18.

The complaint contains a "Verification" that follows all the allegations, stating in part: "I certify under penalty of perjury that the foregoing is true and correct." ROA.20.

## IV. The District Court directed Williams to file an amended complaint on the proper form.

On November 19, 2021, a Pro Se Staff Attorney with the District Court sent Williams a Deficiency Notice because Williams did not use the approved form for his claims under 42 U.S.C. § 1983. ROA.27. He was directed to "amend the pleadings" to correct the deficiency. ROA.27. The Deficiency Notice states that because Williams had "already filed a complaint stating [his] claims and requests for relief," he "need only complete sections I, II, III, and VI of the form complaint," and for "Sections IV and V," regarding the statement of his claim and the relief requested, he could "refer to [his] previously filed complaint." ROA.27, 31–32.

Williams filed his amended complaint on the approved form on November 29, 2021. ROA.33. He did not refer to the original complaint for his statement of the claim and relief requested. ROA.36–37. Instead, he filled out Section IV and V of the form. ROA.36–37. The "Statement of Claim" briefly mentions the cell incident, and it does not mention the shower incident at all. ROA.36. Williams never alleges that anything happened in the stairway, except: "Capt[ain] David Voorhies['s] excessive use of force resulted in a typical injuries[] that involved me being injured with a stress fracture in my right hand." ROA.36. The amended complaint is not verified.

## V.    The Defendants moved for summary judgment asserting qualified immunity.

Voorhies and Walker filed a motion for summary judgment seeking to dismiss the claims against them due to qualified immunity. ROA.696. Relevant to this appeal, Voorhies argued that he did not cause any injury to William's hand as alleged in the stairway incident, that the stairway incident did not happen, and that his use of chemical agent on Williams in the cell was warranted and minimal under the circumstances. ROA.707–11. Walker argued that he was not present for the stairway incident and could not have used excessive force. ROA.716. Thus,

13

Voorhies and Walker argued that Williams cannot establish a constitutional violation for excessive force, and therefore, they have qualified immunity. ROA.707–11.

In opposition, Williams argued the logbook proved Walker was present because he initialed the logbook showing that he was making rounds. ROA.793. (However, the logbook shows that Walker started making his rounds at 7:50 a.m., 45 minutes after the incident occurred at 7:05 a.m. ROA.799.) He also argued that the medical report that Walker signed on behalf of Williams proved that Walker was present for the shower incident. ROA.794.

## VI.    The Magistrate Judge recommended granting the motion in part and denying it in part, and the District Court adopted the recommendation.

The Magistrate Judge recommended that the District Court dismiss the claims about the cell incident and about the shower incident. ROA.913, 918, 921, 926. However, it recommended that summary judgment should be denied as to the excessive force claim against Voorhies and the corresponding failure to intervene claim against Walker related to the stairway incident. ROA.913, 920, 921, 926.

14

Even though Williams himself did not rely on his original complaint, the Magistrate Judge found that it was "competent summary judgment evidence presented by Williams" because it is verified. ROA.916. Thus, the District Court accepted Williams's description of the incident as true, including Walker's alleged involvement. ROA.916.

As to the stairway incident, again relying on the "verified complaint," ROA.918, the Magistrate Judge found that Voorhies "pushed Williams against the wall while he was restrained with sufficient force to cause his lip to bleed and proceeded to press Plaintiff's hands, causing him excruciating pain and a stress fracture in his right hand." ROA.918–19. The Magistrate Judge found that the "verified complaint[] indicates that Williams was complying with orders" and that "there was no need for force because [Williams] was restrained and posing no threat." ROA.919. As a result, the Magistrate Judge also found that "there w[ere] no efforts made to temper the severity of a forceful response" and that "the force was severe enough and applied for a long enough time for Williams to feel something 'crack' in his hand and to cause his lip to bleak." ROA.919. The Magistrate Judge nevertheless described the injury as "minimal." ROA.919. The Magistrate Judge ultimately

15

concluded that "a genuine dispute of material fact [exists] whether force was applied by Voorhies maliciously." ROA.920.

As to the claim against Walker for failure to intervene, the Magistrate Judge again relied on the "verified complaint," ROA.921, finding that Walker "was close enough to tell Williams to 'shut the f**k up.'" ROA.921. So, the Magistrate Judge found that, under "Plaintiff's version of facts, Walker should have known that Voorhies was violating Plaintiff's constitutional rights by pressing him against a wall while restrained" and "had time to intervene, as he was able to tell Williams 'shut the f**k up.'" ROA.921. Thus, the Magistrate Judge found a "genuine issue of material fact" on the claim against Walker for failure to intervene. ROA.921.

Voorhies and Walker filed Objections to the Report and Recommendation. ROA.927. They asserted that the Magistrate Judge "failed to recognize that [] Walker cannot be held liable for failing to intervene because he had no reasonable opportunity to prevent the alleged harm" that occurred in a matter of seconds. ROA.927, 928. They also asserted that the Magistrate Judge "failed to recognize that [] Voorhies's alleged use of force was not excessive, but applied in a good-

16

faith effort to maintain or restore discipline." ROA.928. Thus, they contended that the Magistrate Judge "failed to recognize that the Defendants are entitled to qualified immunity." ROA.928. Williams did not object to the Report and Recommendation, including the recommended dismissal of the claims about the cell incident and the shower incident.

The District Court adopted the Report and Recommendation "[a]fter independently reviewing the entire record." ROA.933. The District Court denied summary judgment as to the claims arising from the stairway incident.[2] ROA.933.

## SUMMARY OF THE ARGUMENT

Voorhies and Walker are entitled to qualified immunity because Williams presented no evidence establishing they violated his constitutional rights. He had the burden to present such evidence to defeat their motion for summary judgment on qualified immunity, and he failed. Even accepting the original complaint's allegations as true, the

---

[2] The District Court dismissed with prejudice all other claims against Walker and Voorhies. ROA.933. Also, the Magistrate Judge had recommended dismissing any state law claims that Williams *may* have attempted to assert based on lack of subject matter jurisdiction. ROA.924. The District Court initially adopted that recommendation, but it later vacated that aspect of the judgment. ROA.946.

Magistrate Judge and District Court erred in finding that it states constitutional violations in the stairway.

Walker has qualified immunity for the claim that he failed to intervene to stop Voorhies from using excessive force in the stairway. Voorhies did not use excessive force, so Walker cannot be liable for not stopping him from doing so. Further, Walker's declaration conclusively established that he was not present for the cell incident, the stairway incident, or the shower incident. He cannot be liable for failing to intervene if he was not present. The Magistrate Judge and the District Court nevertheless found that Walker was present and that he failed to intervene based *only* on the original complaint and *only* because it is verified. However, Williams filed an amended complaint that did not refer to or incorporate the original complaint. So, the original complaint is a nullity and could not be considered in ruling on the motion for summary judgment.

But even if it is appropriate to consider the original complaint, it does not establish that Walker failed to intervene. To be liable for a failure to intervene, an officer must have a reasonable opportunity to prevent the alleged harm. Williams alleged that Voorhies suddenly "led"

18

him to a wall and pressed on his hand in a matter of seconds. Walker did not have reasonable opportunity to prevent the alleged harm under those circumstances, as a matter of law.

Voorhies is also entitled to qualified immunity because Williams provided *no* evidence establishing excessive force in the stairway. The competent summary judgment evidence shows that the stairway incident did not occur. The unverified amended complaint superseded and nullified the original complaint. So, it could not establish that Voorhies used excessive force in the stairway.

Nevertheless, the original complaint does not show that Voorhies used excessive force. It does not reveal that Voorhies maliciously and sadistically used force against Williams to inflict cruel and unusual punishment on him. Williams's injuries were *de minimis*, showing that the force used was *de minimis*. He only suffered a busted lip and a swollen hand. The original complaint does not establish the alleged use of force was unprovoked, as the Magistrate Judge stated. It does not allege what Williams was doing, but it alleges he was making excuses for his conduct that provoked Voorhies to use force—he told Voorhies he could not see because of the chemical agent. Finally, the original

complaint does not establish the relationship between the amount of force used and the necessity for the force, the threat reasonably perceived by Voorhies, or any efforts Voorhies made to temper the severity of a forceful response. So, the original complaint cannot establish that the use of force was excessive on summary judgment where the plaintiff must show that qualified immunity does not apply.

## ARGUMENT

### I. The Court may reverse the denial of summary judgment because Williams failed to establish that the Defendants lack qualified immunity.

A government official, sued individually, may raise the defense of qualified immunity in response to a § 1983 claim. *Stevenson v. Toce*, 113 F.4th 494, 501 (5th Cir. 2024). Qualified immunity is a two-part test and both parts must be resolved in the plaintiff's favor to overcome the defense. *Bevill v. Wheeler*, 103 F.4th 363, 371 (5th Cir. 2024) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011)). First, the "plaintiff must show that 'the official violated a statutory or constitutional right.'" *Id.* (citation omitted). "Second, the plaintiff must show that the right was clearly established' at the time of the challenged conduct." *Id.* (cleaned up) (citations omitted).

"A good-faith qualified immunity defense alters the usual summary judgment burden of proof." *Valderas v. City of Lubbock*, 937 F.3d 384, 389 (5th Cir. 2019). Although this Court "view[s] the evidence in the light most favorable to the nonmoving party, the plaintiff bears the burden of demonstrating that a defendant is not entitled to qualified immunity." *Id.* "To negate a defense of qualified immunity and avoid summary judgment, the plaintiff need not present absolute proof, but must offer more than 'mere allegations." *Id.* (cleaned up) (citation omitted).

On a denial of summary judgment on qualified immunity, the Court's jurisdiction is limited to issues of law. *Bevill*, 103 F.4th at 371–72. "At this interlocutory juncture, this court 'cannot challenge the district court's assessments regarding the sufficiency of the evidence— that is, the question whether there is enough evidence in the record for a jury to conclude that certain facts are true." *Id.* at 372 (citations omitted). The Court cannot review the genuineness of factual disputes, but it can review whether facts are material. *Cunningham v. Castloo*, 983 F.3d 185, 190 (5th Cir. 2020). The total absence of evidence is not a question of

whether the evidence is sufficient.[3] *See Columbia Plaza Corp. v. Sec. Nat. Bank*, 676 F.2d 780, 788 (D.C. Cir. 1982) ("the standard of review of a motion for a new trial . . . is not the sufficiency of the evidence, but whether there was a total absence of evidence to support the jury's verdict"); *Ervin v. Masters Res. LLC*, 355 F. App'x 819, 821 (5th Cir. 2009) (on denial of motion for new trial, this Court does "not review the 'sufficiency' of the evidence, but rather 'whether there was an absolute absence of evidence to support the jury's verdict'" (citation omitted)).

Williams was required to establish that his rights were violated because Voorhies used excessive force against him in the stairway and because Walker failed to intervene to stop Voorhies. As explained in Parts II and III below, he failed to meet that burden, even accepting the allegations as true. So, the claims against Voorhies and Walker should have been dismissed.

---

[3] The total absence of evidence is similar to, if not the same as, a case where the Plaintiff's story is "blatantly contradicted by the record, so that no reasonable jury could believe it," allowing the Court to refuse to "adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007). In *Scott*, the Supreme Court reversed the opinion of the court of appeals affirming the *denial* of summary judgment on qualified immunity. So, this Court can exercise jurisdiction and reverse the District Court's judgment to the extent no competent evidence supports it.

**II.    Williams did not establish that Walker failed to intervene, so Walker has qualified immunity for the bystander claim.**

A prison official can be found liable for violating an inmate's Eighth Amendment rights by failing to intervene when another official uses excessive force.[4] *See, Kitchen v. Dallas Cty.*, 759 F.3d 468, 480 (5th Cir. 2014), *abrogated on other grounds by Kingsley v. Hendrickson*, 576 U.S. 389 (2015); *Luken v. Lynaugh*, 98 F.3d 1339 (5th Cir. 1996) (unpublished opinion) ("A convicted inmate's failure-to-protect claim is evaluated under the Eighth Amendment's 'deliberate indifference' standard."). The District Court held that there are genuine issues of material fact whether Walker was present and failed to intervene to stop Voorhies's alleged seconds-long use of excessive force in the stairway.

This Court has jurisdiction to review that holding. The District Court exclusively relied on the Plaintiff's original complaint to support the purported genuinely disputed issues of fact. However, the original complaint was superseded by a subsequent amended complaint, which nullified the original complaint. Reliance on the superseded complaint

---

[4] Failure-to-intervene liability is also called "bystander" liability. *See Whitley v. Hanna*, 726 F.3d 631, 646 (5th Cir. 2013).

was a legal error, which this Court can review on this collateral order appeal.

Further, the dispute about Walker's presence in the stairwell is immaterial. Even if the superseded allegations are accepted as true, Voorhies's alleged use of force in the stairwell lasted only seconds. Therefore, in Plaintiff's version of events, Walker did not have a realistic opportunity to determine that the use of force was unconstitutionally excessive and then time to intervene to stop the seconds-long event.

**A.    This Court should reverse because the District Court was not permitted to rely on the original complaint to deny summary judgment.**

The Magistrate Judge and the District Court relied *only* on Williams's original complaint to find genuine issues of material fact regarding Walker's allegedly unconstitutional failure to intervene. ROA.921, 933. However, the District Court's exclusive reliance on the original complaint was legal error because Williams had filed an amended complaint that superseded the original complaint and made it a nullity. This Court has jurisdiction to correct that legal error in this appeal of a denial of a motion for summary judgment on qualified immunity. *Durant v. Brooks*, 826 F. App'x 331, 335 (5th Cir. 2020)

24

("'where the admissibility of particular evidence is critical to a denial of summary judgment founded on qualified immunity, this court has not hesitated to review the admissibility of the evidence on appeal'") (cleaned up) (quoting *Mersch v. City of Dallas, Tex.*, 207 F.3d 732, 735 (5th Cir. 2000), *superseded by rule on other grounds as recognized in Maurer v. Independence Town*, 870 F.3d 380, 384 n.1 (5th Cir. 2017)).

"An amended complaint supersedes the original complaint and renders it of no legal effect unless the amended complaint specifically refers to and adopts or incorporates by reference the earlier pleading." *New Orleans Ass'n of Cemetery Tour Guides & Companies v. New Orleans Archdiocesan Cemeteries*, 56 F.4th 1026, 1033 (5th Cir. 2023) (quoting *King v. Dogan,* 31 F.3d 344, 346 (5th Cir. 1994)). The "failure to adopt or incorporate by reference a prior complaint nullifies that document." *Id.* at 1034.

This Court in *King* held that a superseded original complaint (even if verified) cannot be considered on a motion for summary judgment. This Court noted that the plaintiff's "original complaint was verified as true and correct . . . and could have been considered as competent summary judgment evidence," but the plaintiff filed two amended complaints that

were not verified that superseded the original complaint. 31 F.3d at 346.

Because the plaintiff's second amended complaint "was the only effective

complaint, and because it was unverified, it [did] not constitute

competent summary judgment evidence." *Id.*; *see also McDonald v.

McClelland*, 779 F. App'x 222, 225 (5th Cir. 2019) (superseded complaint

even if verified is not competent summary judgment evidence); *Chester v.

Samuels*, 740 F. App'x 410, 411 (5th Cir. 2018) (same).

The superseding amended complaint mentions nothing about the

stairway incident (other than Williams alleging he suffered a stress

fracture), much less whether Walker was present. ROA.36. So, it fails to

establish that Walker was present for the alleged stairway incident and

that he violated the Eighth Amendment by failing to intervene in a

seconds-long use of excessive force.

It is true that Williams only filed the pro se amended complaint

after a Deficiency Notice advised him that he must use the approved form

complaint for civil rights claims. ROA.27–28. However, the Deficiency

Notice stated: "Since you have already filed a complaint stating your

claims and requests for relief, you need only complete sections I, II, III,

and VI of the form complaint. For sections IV and V, you may refer to

your previously filed complaint . . . ." ROA.27. Those instructions are clear, even for a pro se plaintiff. Rather than refer to the original complaint and thereby incorporate it into the amended complaint, Williams filled out sections IV and V, regarding the "Statement of Claim" and "Relief," respectively. ROA.36–37. So, the amended complaint superseded the original complaint and it was legal error for the District Court to rely on the nullified pleading.

This Court's precedent is clear that an amended complaint supersedes the original complaint, and a superseded complaint is not competent summary judgment evidence. *King*, 31 F.3d 344. The error affected Walker's and Voorhies's immunity from suit due to qualified immunity. *See Carswell v. Camp*, 54 F.4th 307, 310 (5th Cir. 2022) (qualified immunity is immunity from suit itself, not just liability). Without correction, the Defendants will be forced to endure this litigation even though Williams failed to rebut qualified immunity, which he is required to do. *Ramirez v. Escajeda*, 44 F.4th 287, 291 (5th Cir. 2022) (plaintiff has burden to show that qualified immunity does not apply in response to motion for summary judgment).

**B.    Voorhies did not use excessive force against Williams in the stairway, and even if he did, Walker was not present to intervene.**

An officer is liable for failure to intervene if he "(1) knew a fellow officer was violating an individual's constitutional rights, (2) was present at the scene of the constitutional violation, (3) had a reasonable opportunity to prevent the harm but nevertheless, [and] (4) chose not to act." *Timpa v. Dillard*, 20 F.4th 1020, 1038 (5th Cir. 2021) (cleaned up) (citation omitted). The officer must "acquiesce in the alleged use of excessive force." *Hale v. Townley*, 45 F.3d 914, 919 (5th Cir. 1995). Clearly, "liability will not attach where an officer is not present at the scene of the constitutional violation." *Whitley v. Hanna*, 726 F.3d 631, 646 (5th Cir. 2013).

Walker cannot be liable for failure to intervene because Voorhies did not use excessive force, as discussed below in Part III. Walker cannot fail to intervene to stop a constitutional violation that did not occur. *See Terrell v. Allgrunn*, 114 F.4th 428, 440 (5th Cir. 2024) ("All the specific instances, listed by plaintiffs as points at which Henderson and Banta failed to intervene, were not violations of clearly established constitutional law. That ends the inquiry."); *Turner v. City of*

28

*Champaign*, 979 F.3d 563, 571 (7th Cir. 2020) ("'. . . if there is no excessive force then there can be no failure to intervene'" (citation omitted)); *Davis v. Cannon*, 91 F. App'x 327, 329 (5th Cir. 2004) ("As Steele's actions did not constitute excessive force, Reed and Campbell are not liable for failing to intervene and protect Davis.").

Even if Voorhies used excessive force, no summary judgment evidence establishes that Walker was present. He cannot be liable for failing to stop Voorhies's alleged excessive force if he was not present. *Whitley*, 726 F.3d at 646. Walker stated in his declaration that he "was not present on the Cell Block D Upper Left Tier during the incident" that Williams claims occurred.[5] ROA.725. He simply cannot be liable for failing to intervene.

### C. The original complaint does not establish Walker violated Williams's rights by failing to intervene to stop the alleged excessive force.

The Magistrate Judge and the District Court improperly relied on the original complaint to deny summary judgment, as discussed above. But even if the original complaint could be considered, it does not

---

[5] The declarations were unsigned when filed, but the District Court permitted identical, signed versions of the declarations to be submitted in their place. ROA.876.

establish that as a matter of law Walker would be liable for failing to intervene. So, to the extent it presents an issues of fact, they are immaterial facts.

Accepting as true the allegation that Walker was present for the stairway use of force, the original complaint demonstrates that Walker had no "reasonable opportunity to prevent" the alleged harm. *Timpa*, 20 F.4th at 1038. An "an officer is only liable if there is a realistic and reasonable opportunity to intervene." *Smith v. Mensinger*, 293 F.3d 641, 651 (3d Cir. 2002). "Naturally enough, the duration of the incident is key to determining whether there was a reasonable opportunity." *El v. City of Pittsburgh*, 975 F.3d 327, 335 (3d Cir. 2020). The Magistrate Judge incorrectly found that Walker had a reasonable opportunity to intervene simply because he had time to utter four words. ROA.921. That is tantamount to finding a failure to intervene merely due to Walker's presence, which is insufficient. *Joseph*, 981 F.3d at 343 ("Bystander liability requires more than mere presence in the vicinity of the violation").

Walker alleges a sudden use of force that lasted only seconds. Courts of Appeals routinely find no failure to intervene when the use of

force lasted mere seconds, because the defendant had no reasonable opportunity to prevent the alleged harm. *Jackson v. City of Atlanta, Georgia*, 97 F.4th 1343, 1363 (11th Cir. 2024) (no failure to intervene when use of force lasted "approximately nine seconds"); *Cortesluna v. Leon*, 979 F.3d 645, 656 (9th Cir. 2020), *cert. granted, decision rev'd on other grounds as to separate defendant sub nom. Rivas-Villegas v. Cortesluna*, 595 U.S. 1 (2021), *and adhered to in part*, 22 F.4th 866 (9th Cir. 2022) ("But there is no evidence that Kensic knew what the other defendants would do, and the events unfolded very rapidly—in a matter of seconds. Kensic therefore lacked any realistic opportunity to intercede."); *El*, 975 F.3d at 335–36 ("no reasonable jury could conclude that [defendant] had a realistic and reasonable opportunity to intervene" to stop use of force lasting "roughly five seconds"); *Wilson v. Town of Mendon*, 294 F.3d 1, 14 (1st Cir. 2002) (no failure to intervene in "struggle in the cellblock vestibule" that "lasted only a few seconds"); *Gaudreault v. Municipality of Salem, Mass.*, 923 F.2d 203, 207 n.3 (1st Cir. 1990) ("But Gaudreault's complaint (which contains the only account of the attack in the record) also says that the attack came quickly and was over in a matter of seconds. A police officer cannot be held liable for failing to

31

intercede if he has no 'realistic opportunity' to prevent an attack."); *see also Quinn v. Zerkle*, 111 F.4th 281, 295–96 (4th Cir. 2024) ("Nothing in the record suggests that Lt. Zerkle could have prevented the Kanawha Deputies['] actions between the time the door opened and the time [other officers] entered [a home to conduct an illegal search]. The [] bystander liability claim therefore fails."); *Lanigan v. Vill. of E. Hazel Crest, Ill.*, 110 F.3d 467, 478 (7th Cir. 1997) ("Robertson did not have a realistic opportunity to intervene . . . . The complaint does not allege . . . any further acts of physical force by Sergeant Krane beyond the alleged push and poke . . . . We do not believe that Chief Robertson was forced to throw himself between Sergeant Krane's finger and Lanigan's body to interrupt the imminent poke . . . ."). These cases also establish that Walker's inaction was not objectively unreasonable under clearly established law. *See Keller v. Fleming*, 952 F.3d 216, 225 (5th Cir. 2020) (precedent must be "sufficiently clear such that every reasonable official would have understood that what he is doing violates that law").

Williams alleges that Voorhies and Walker escorted him "down CBD stairway." ROA.15. Voorhies then allegedly "purposefully led [Williams] straight to the wall of the stairway," causing his "lip to bleed."

32

ROA.15. Williams alleged no facts establishing that Walker knew what was going to happen so that he could have stopped such a sudden use of force. *See Hughes v. Rodriguez*, 31 F.4th 1211, 1223 (9th Cir. 2022) (defendants could not "be held liable for fleeting acts which they did not commit, came without warning, and could not have prevented"); *Riley v. Newton*, 94 F.3d 632, 635 (11th Cir. 1996) ("Because Glisson had no reason to expect the use of excessive force until after it had occurred, he had no reasonable opportunity to protect Lowe . . . ." (citing *O'Neill v. Krzeminski,* 839 F.2d 9, 11–12 (2d Cir.1988)); *Thomas v. Holly*, 533 F. App'x 208, 223 (4th Cir. 2013) ("[N]o reasonable jury could find that Sergeant Smith had a reasonable opportunity to prevent [alleged] harm but nevertheless chose not to do so. Sergeant Smith had no prior knowledge [of the use of force]. He only saw Deputy Estes knee Plaintiff in the side of the face one time and only saw the other officer taser Plaintiff one time."); *Matthews v. Villella*, 381 F. App'x 137, 140 (3d Cir. 2010) ("even assuming Villella used excessive force, it does not appear that Herbling could have had any opportunity to intervene in Villella's sudden use of force"); *Evans v. Cameron*, 442 F. App'x 704, 706 (3d Cir.

2011) ("Evans did not allege that the defendants were aware of a threat to him when he was attacked in his cell.").

Williams alleged that Voorhies "pressed against" his right hand in a matter of "seconds." ROA.15. He alleged that the "excessive abuse lasted for seconds." ROA.15. He alleges no facts showing Walker could have stopped Voorhies from "press[ing] against" his right hand in a matter of "seconds." On summary judgment, Williams had the burden to fill in these blanks. *Ramirez*, 44 F.4th at 291. Without doing so, the events described in his complaint, accepted as true, do not establish a failure to intervene. Williams established no constitutional violation and consequently failed to show Walker is not entitled to qualified immunity.

## III. Williams did not establish that Voorhies used excessive force against him in the stairway, so Voorhies has qualified immunity for that claim.

Williams had the burden to establish that Voorhies is not entitled to qualified immunity by providing evidence that he used excessive force in the stairway. *Valderas*, 937 F.3d at 389. He provided no evidence establishing excessive force. The Magistrate Judge and District Court impermissibly relied on the original complaint that had been superseded and nullified. But even considering the original complaint, it does not

34

reveal Voorhies used excessive force. It also does not reveal that Voorhies maliciously and sadistically used force against Williams to inflict cruel and unusual punishment on him.

To determine whether excessive force was used in violation of a prisoner's Eighth Amendment rights, a court must determine "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Santos v. White*, 18 F.4th 472, 475 (5th Cir. 2021). The focus is "on the detention facility official's subjective intent." *Cowart v. Erwin*, 837 F.3d 444, 452–53 (5th Cir. 2016) (citation omitted). To determine whether force was applied with malicious or sadistic intent, courts analyze (1) the extent of the injury the inmate sustained, (2) the need for use of force, (3) "'the relationship between that need and the amount of force used,'" (4) "'the threat reasonably perceived by the responsible officials,'" and (5) "'any efforts made to temper the severity of a forceful response.'" *Bourne v. Gunnels*, 921 F.3d 484, 491 (5th Cir. 2019) (citation omitted); *Cowart*, 837 F.3d at 452–53 ("intent is determined by reference the well-known *Hudson* factors").

However, "not 'every malevolent touch by a prison guard gives rise to a federal cause of action.'" *Wilkins*, 559 U.S. at 37 (citation omitted). "The Eighth Amendment's prohibition of cruel and unusual punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." *Id.* at 37–38 (cleaned up). A push or shove that "causes no discernible injury almost certainly fails to state a valid excessive force claim." *Id.* at 38. A *de minimis* injury indicates that the use of force was *de minimis* and therefore no violation of the Eight Amendment, even if the force used was the result of malevolence toward the inmate. *Id.* at 37; *Cowart*, 837 F.3d at 453 ("A plaintiff need not show significant injury, although the extent of the injury may supply insight as to the amount of force applied.").

The Magistrate Judge found the force used to be "minimal," ROA.919, which shows that Voorhies did not intend to maliciously harm Williams. However, the Magistrate Judge incorrectly construed the original complaint as stating that Voorhies used force without provocation, finding the force excessive as a result. The original complaint reveals that Williams did something to provoke the force used

36

against him—he was making excuses for his conduct. The original complaint contains no information to otherwise determine whether the force used was excessive in response to whatever he was doing, and Williams had the burden to establish that. The District Court should have granted summary judgment because Williams did not establish a constitutional violation as a matter of law. As a result, Voorhies has qualified immunity.

## A. The Magistrate Judge and the District Court impermissibly relied on the original complaint.

All of the evidence that Voorhies submitted in support of his motion for summary judgment establishes that the alleged incident in the stairway never occurred. His declaration, the disciplinary report, the unusual occurrence report, and his ARP Statement do not mention it. ROA.723–24, 748, 752–53, 789. If he had used force in the stairways, he would have had to report it. 22 La. Admin. Code Pt I, § 341.F.1.a.i(a)(iii)[c] ("disciplinary report shall include . . . a description of any unusual inmate behavior . . . and any immediate action taken, including the use of force").

On summary judgment, Williams had the initial burden to show that the incident occurred and that the force used was excessive.

*Valderas*, 937 F.3d at 389. He failed to produce such evidence, and the *only* "evidence" that the Magistrate Judge and District Court relied upon was the original complaint that was superseded by the amended complaint. ROA.918–19. As discussed in Part II.A above, the original complaint is a nullity and cannot be considered when deciding a motion for summary judgment. *King*, 31 F.3d at 346. For that reason alone, this Court should reverse the District Court's denial of summary judgment on qualified immunity.

### B.   The original complaint does not establish that Voorhies used excessive force in the stairway.

The record does not support the conclusion that Voorhies maliciously and sadistically "led"[6] Williams to a wall and maliciously and sadistically pressed his hand. Thus, Voorhies did not intend to inflict cruel and unusual punishment upon Williams.

### 1.   The injuries were *de minimis.*

Again, the *Hudson* factors are meant to assess whether Voorhies had malicious or sadistic intent when allegedly leading Williams to the wall and pressing on his hand, and the first factor is the extent of the

---

[6] ROA.14.

injury. *Cowart*, 837 F.3d at 452–53; *Bourne*, 921 F.3d at 491. The Magistrate Judge acknowledged the alleged injury was "minimal," ROA.919, but also found the use of force "was severe enough and applied for a long enough time for Williams to feel something 'crack' in his hand and to cause his lip to bleed." ROA.919. Indeed, Williams evidently also felt his injuries were minimal—he "refused to stand up" to be evaluated when he was brought to the infirmary after the incident. ROA.733. His medical records never mention complaints about a busted lip. ROA.104–65, 727–37.

Really, the only potentially proven injury was some hand swelling. Medical records show that Williams's hand was not fractured, so the Court cannot credit the original complaint's allegation that Voorhies fractured his hand. *Scott v. Harris*,[7] 550 U.S. 372, 380 (2007) ("When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment."); *Brooks v. Kelly*, 736 F. App'x 497, 498

---

[7] In *Scott*, the Court reversed the denial of summary judgment on qualified immunity. 550 U.S. at 376. So, this Court can reject any finding that Williams fractured his hand on this appeal.

(5th Cir. 2018) (rejecting plaintiff's version of events contradicted by medical records); *Bradshaw v. City of New York*, 855 F. App'x 6, 10 (2d Cir. 2021) (same). An X-ray of his hand taken about 10 hours before the incident (because of his previous fight with another inmate) showed "[n]o evidence of acute fracture" and no "dislocation." ROA.737.

More importantly, other X-rays taken after the incident also showed no fractures. A September 26, 2021 medical record states that Williams had an X-ray on May 7, 2021 that was "normal." ROA.109. Nearly seven months after the incident, on December 12, 2021, Williams himself acknowledged X-rays "came back (Negative)," and medical providers noted that his X-rays had been negative two times already. ROA.107. Williams himself told medical providers on May 5, 2021, that he "was involved in a simple fight to where [his] right hand was fracture[d]." ROA.731.

The only noted injury in the days after the alleged stairway incident was some "swelling" to the right "thumb/palm" area and under his right "index finger." ROA.730. A May 11, 2021 record states that, by then, he had no "swelling or bruising" and that he was "able to flex and grip."

ROA.732. Also, he was complaining of right hand swelling the day *before* the incident. ROA.734–35.

As to any hand injury, the Magistrate Judge's recommendation focused only on "excruciating pain" and the alleged fracture, not any swelling. ROA.917–20. The medical evidence shows he had no fracture. The actual injury—swelling—is *de minimis. See Williams v. Stevens*, 192 F.3d 127 (5th Cir. 1999) (unpublished opinion) ("undisputed summary-judgment evidence demonstrates that Williams suffered, at most, only *de minimis* injury, discomfort and swelling to the wrists, for which he did not request or receive medical treatment").

Plaintiff's busted lip, resulting from being led to the wall, was *de minimis*, too. Courts have found that little more than a busted lip is a *de minimis* injury in light of minimal force used. *Lee v. Wilson*, 237 F. App'x 965, 966 (5th Cir. 2007) (busted lip was *de minimis* injury in context of reasonable attempt to maintain order); *Calabria v. Dubois*, 23 F.3d 394 (1st Cir. 1994) (unpublished opinion) ("The conduct presented here—a single blow caused by a thrown object and resulting only in a bloody lip—was clearly *de minimis* for Eighth Amendment purposes, and Calabria's complaint was properly dismissed as legally deficient."); *see also Lockett*

41

*v. Suardini*, 526 F.3d 866, 876 (6th Cir. 2008) ("Shoving, grabbing, and bending back two of Lockett's fingers also required only minimal force and was reasonably related to . . . bringing Lockett under control and returning him to his cell. . . . Lockett, by his own account, suffered at best only 'minor lacerations and cuts,' and that undisputed evidence showed no dislocation or fracture in his hand."). Such injuries are more than *de minimis* only if the force "calculated to produce real physical harm." *Roberson v. Dallas County*, 207 F.3d 658 (5th Cir. 2000) (unpublished opinion) (citations omitted). Leading or even pushing Williams to a wall does not fit the bill. This is not an instance where Williams was "gratuitously beaten" but had the "good fortune" of only suffering a busted lip. *Wilkins*, 599 U.S. at 38.

The alleged injuries here were *de minimis*, which indicates a *de minimis* use of force. Such *de minimis* force is hardly "excessive," and it indicates no malicious or sadistic intent.

### 2.  Williams did not establish the use of force was unnecessary.

Finding the injuries "minimal," the Magistrate Judge then concluded that "[a]ll other factors . . . weigh against finding that excessive force was not used." ROA.919. The Magistrate Judge found that the

42

original complaint established that leading Williams to the wall and pressing his hand was unprovoked, so use of force was unnecessary. However, the original complaint does not establish the alleged use of force was unprovoked.

The Magistrate Judge stated that the original complaint "indicates that Williams was complying with orders" and was "posing no threat," ROA.919, but that is incorrect. The original complaint contains no allegations whether Williams was complying with orders or not. So, it cannot establish whether the remaining *Hudson* factors favor finding excessive force.

Indeed, the original complaint glaringly omits allegations of Williams's conduct before Voorhies led him to the wall. After alleging he was led to the wall, Williams quotes his *own* statement to Voorhies (at the time of the incident) that he complied with orders, ROA.18, but he was making excuses for something he did that caused Voorhies to lead him to the wall.[8] The original complaint does not indicate that the use of

---

[8] The remaining evidence buttresses the conclusion that the use of force was *not* unprovoked. Voorhies was escorting Williams to the shower to wash off the chemical spray if he wished to do so. ROA.724. Voorhies was doing so only because Williams caused a disturbance necessitating the reasonable use of force—spraying him with the chemical agent. ROA.723. Williams's behavior later in the infirmary shows that

43

force was unnecessary, as the Magistrate Judge construed it. Even if the use of force is unprovoked, it is not an Eighth Amendment violation unless it is "repugnant to the conscience of mankind." *Hudson v. McMillan*, 503 U.S. 1, 10 (1992); *see also Anthony v. Schackmann*, 402 F. App'x 207, 208 (9th Cir. 2010) ("Summary judgment on qualified immunity grounds was proper as to Anthony's excessive force claim because, even construing the facts in his favor, defendant Schackmann's unprovoked, single slap constituted only de minimis force . . . ."); *see also Webster v. Saint Louis Cnty.*, ——F.4th——, 2025 WL 1187171, at *2 (8th Cir. Apr. 24, 2025) ("Although Webster was bruised by the volleyball, the act of throwing such a ball [at inmate for merely talking] is not so inherently dangerous that every reasonable officer should have anticipated that her action was likely to cause injury.").

### 3.   The original complaint establishes nothing regarding the remaining *Hudson* factors.

The Magistrate Judge's conclusion that the original complaint showed that the force was unnecessary tainted its remaining analysis. The only reason the Magistrate Judge found that the remaining factors

---

he was uncooperative. He was laying on the floor and was refusing treatment. ROA.733.

weigh in favor of finding malicious intent was that the use of force in the stairway was unnecessary or unprovoked. ROA.919–20. However, as discussed above, that conclusion is incorrect. Thus, the Magistrate Judge's analysis regarding the relationship between the need for force and the amount of force used was based on a faulty premise, as well as the conclusion that there was no threat reasonably perceived by Voorhies and that Voorhies made no efforts to temper the severity of his forceful response.

The original complaint reveals that Voorhies used force for some unidentified reason. Williams had the burden to show that the remaining *Hudson* factors favored finding the alleged use of force was excessive. His original complaint reveals *nothing* by which to assess those factors. So, his original complaint could not establish excessive force. The District Court should have granted summary judgment because Williams showed no constitutional violation, failing entirely to rebut the assertion of qualified immunity.

## CONCLUSION

This Court should reverse the District Court's denial of summary judgment on qualified immunity for Williams's remaining claims in this

case and remand with instructions to dismiss this case with prejudice, at

Plaintiff's cost. The Court should assess all costs of the appeal to

Williams.

Respectfully submitted,

LIZ MURRILL
Louisiana Attorney General

*/s/Timothy R. Wynn*
PHYLLIS E. GLAZER (La. #29878)
TIMOTHY R. WYNN (La. #35393)
LEONARD PENZO (La. #36759)
Assistant Attorneys General

Louisiana Department of Justice,
Litigation Division
330 Marshall Street, Suite 777
Shreveport, Louisiana 71101
Telephone: (318) 676-5700
WynnT@ag.louisiana.gov
*Counsel for Defendants-Appellants*

**CERTIFICATE OF SERVICE**

I certify that on May 7, 2025, I filed the foregoing brief with the Court's CM/ECF system, which will automatically send an electronic notice of filing to parties represented by CM/ECF participants. I further certify that a copy of the foregoing brief was sent via U.S. Mail to the self-represented Plaintiff–Appellee at his most current address in the record:

Alvin Williams (#480922)
Louisiana State Penitentiary
Angola, LA 70712

*/s/ Timothy R. Wynn*
Timothy R. Wynn
Counsel for Defendants-Appellants

# CERTIFICATE OF COMPLIANCE

Pursuant to Fifth Circuit Rule 32.3, the undersigned certifies that:

1.     This brief complies with the type-volume limitations of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains <u>9,402</u> words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f).

2.     This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word 2016, Century Schoolbook, 14-point font.

*/s/ Timothy R. Wynn*
Timothy R. Wynn
Counsel for Defendants-Appellants
May 7, 2025
